# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

MIA LU M.,

                                   Plaintiff,

        v.                                  1:19-CV-843(ATB)

COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

                                   Defendant.

---

JOSEPHINE GOTTESMAN, ESQ., for Plaintiff
SIXTINA FERNANDEZ, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") on November 17, 2016, alleging disability beginning August 1, 2016.  (Administrative Transcript ("T") at 77, 138-43).  Her application was denied initially on January 17, 2017.  (T. 77-80).  At the request of the plaintiff, Administrative Law Judge ("ALJ") Asad M. Ba-Yunus conducted a hearing on May 2, 2018, at which plaintiff and vocational expert ("VE") Donald Schader gave testimony. (T. 29-66).

In a decision dated July 25, 2018, the ALJ found that plaintiff was not disabled.

(T. 13-23).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on June 11, 2018.  (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the

[Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

Plaintiff was born on July 21, 1993, making her 24 years old on the date of the administrative hearing.  (T. 37).  She lived in an apartment with her brother and two mothers.  (*Id.*).  Although she was a licensed driver, she seldom drove because she did not own a car, and felt that she might be a "liability."  (T. 38).  Plaintiff was diagnosed with dyslexia in school, which limited her reading and writing abilities.  (T. 40-41). She had an IEP and received classroom and testing accommodations.  (*Id.*).  After graduating high school, plaintiff attended college for three years pursuing a degree in graphic design.  (T. 40).  She could not finish the program, however, as she suffered a "mental health breakdown."  (T. 40).  Plaintiff received Medicaid benefits.  (*Id.*).

4

Plaintiff testified that her diagnosis of bipolar disorder, and the effects of her treatment, prevent her from working a full-time job.  (T. 46-47).  She treated with therapy and medical management.  (T. 48-50).  She had been admitted for inpatient treatment in the past.  (*Id.*).  Her mental health condition and learning disability affected her performance in prior work experiences.  (T. 47-48).

When her symptoms were controlled by medication, plaintiff could perform some tasks at home, and could mostly tend to her own personal care.  (T. 50-52).  Plaintiff's energy and motivation suffered when she did not take her medicine.  (T. 51).  She socialized with friends a couple times a week, and got along well with her family.  (T. 53).  She did not like large crowds, and sometimes felt she couldn't leave her house. (T. 54, 57).  Her symptoms were worse when she was working and going to college. (T. 58).  Plaintiff had trouble falling asleep, and often woke during the night.  (T. 56). Plaintiff spent her free time drawing and listening to audio books.  (T. 58-59).

The parties' pleadings and the ALJ's decision provide a detailed statement of the medical and other evidence of record.  Rather than recite this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   **THE ALJ'S DECISION**

The ALJ first found that plaintiff had not engaged in substantial gainful activity since her application date of November 17, 2016.  (T. 15).  Next, the ALJ found that plaintiff's diagnosis of bipolar disorder was a severe impairment at step two of the sequential evaluation.  (*Id.*).  At the third step, the ALJ determined that plaintiff's

impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 24).

At step four, the ALJ found that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she is limited to semi-skilled tasks, may have occasional interaction with supervisors and the general public, and can tolerate only occasional changes to a routine work setting.  (T. 17).

Next, the ALJ determined that plaintiff had no past relevant work.  (T. 22). However, relying on the VE's testimony, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 22-23).  Accordingly, the ALJ determined that plaintiff was not disabled from the application date of November 17, 2016 through the date of the ALJ's decision.  (T. 28).

## V.    <u>ISSUES IN CONTENTION</u>

Plaintiff argues that the ALJ incorrectly evaluated the medical and other evidence of record, which shows that plaintiff is unable to engage in substantial gainful activity. (Plaintiff's Brief ("Pl.'s Br.") at 19-25) (Dkt. No. 9).  Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed.  (Defendant's Brief ("Def.'s Br.") at 6-14) (Dkt. No. 12).  For the following reasons, this court agrees with the plaintiff and will order remand to the Commissioner for further proceedings.

## DISCUSSION

## VI.   RFC EVALUATION/TREATING PHYSICIAN

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations.

Ordinarily, RFC is the individual's maximum remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular

and continuing basis" means eight hours a day, for five days a week, or an equivalent

work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2

(N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)

(quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-

00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v.*

*Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F.

Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical

facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R.

§§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)

(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v.*

*Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019);

7

*Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings."  The responsibility for determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

8

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" of the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). This is known as the "treating physician rule." In *Estrella v. Berryhill*, the court emphasizes the importance of a treating source's opinion in cases concerning mental impairments, as "cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence[.]" *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (quoting *Garrison v. Colvin*, 759 F. 3d 995, 1017 (9th Cir. 2014)).

If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (quoting *Burgess*

*v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Estrella*, 925 F.3d at 96.  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed[.]"  *Id.*

## B.    Application

Plaintiff argues that the ALJ erred in assigning "little weight" to the opinions of plaintiff's treating physician, Robert Hertz, M.D., and plaintiff's therapist, Marianne Milks Hines, L.C.S.W.  The ALJ went on to assign "partial weight" to the only other medical opinion of record – that of state agency medical consultant O. Austin-Small, Ph.D.  Plaintiff contends that the ALJ's evaluation of the medical opinion evidence violated the treating physician rule, was not supported by substantial evidence, and warrants remand.  The court will briefly summarize the record evidence related to plaintiff's treatment and the opinions of Dr. Hertz, Ms. Hines, and Dr. Austin-Small, before analyzing the ALJ's evaluation of such evidence.

On September 29, 2016, plaintiff was admitted to Four Winds Hospital to "address symptoms of psychosis and mood lability."[1]  (T. 308).  Specifically, plaintiff

---

[1] Plaintiff was attending college prior to her admission at Four Winds Hospital.  Based on plaintiff's complaints to her primary care physician, during this period she was experiencing increasing symptoms of stress, anxiety, difficulty concentrating, and lack of sleep.  (T. 233, 238, 243, 248, 259, 277, 294).

was exhibiting manic behavior, including frequent mood changes and threats of self-harm.  (T. 316).  Her mother reported that plaintiff's mental health had been declining since August, and plaintiff was not sleeping.  (*Id.*).  Plaintiff was placed on medication at that time, however her parents questioned its effect.  (*Id.*).  She continued to struggle to function in her daily life, and was behaving "bizarrely" at college.  (T. 308).  Plaintiff reported feeling "crazy in her mind," believing that her parents were trying to kill her, and thinking of harming herself or others.  (T. 308).  In September, plaintiff sent messages to her peers indicating that her parents were trying to harm her.  (T. 308).  She was asked to leave college due to her "behaviors."  (T. 308).  The next day, she presented to Four Winds Hospital where she was admitted for 11 days of inpatient treatment. (T. 308-36).

After she was discharged from Four Winds Hospital, plaintiff continued her mental health treatment via outpatient services at Pinnacle Behavioral Health. (T. 352).  There, plaintiff reported that she had not been sleeping prior to her admission because she was "stressed out." (T. 352).  Plaintiff presented as agitated about her pre-existing diagnosis of bipolar disorder.  (T. 353).  At her initial appointment on October 13, 2016, plaintiff's mental examination revealed unusual mannerisms, slurred speech, apathetic mood, and flat/blunted affect.  (T. 354).  Her thought processes were described as disorganized, her insight poor and her judgment impaired.  (*Id.*).  Plaintiff presented for weekly follow-up treatment through November 2016.  She reported that

11

she would not be able to return to college for another year, and was hoping to use the

interim time to focus on herself and heal.  (T. 346).  The results of plaintiff's mental

health examinations improved over a two month period, and plaintiff described having

less to talk about in therapy, as she had less stress in her life.  (T. 346).

In December 2016, plaintiff changed mental health providers for insurance

purposes.  The record contains extensive treatment notes documenting plaintiff's

weekly-to-biweekly visits to Equinox Mental Health Clinic through October 2017.

There, plaintiff attended individual and group therapy with licensed social worker

Jenna Bernhardt.[2]  She was also treated by Dr. Hertz for psychiatric medication

management.  Dr. Hertz filled out a Mental Impairment Questionnaire on April 4, 2017.

He listed plaintiff's diagnosis as "Bipolar I, most recent manic [with] psychosis."  (T.

369).  Among other things, he assessed that plaintiff was unable to meet competitive

standards in her ability to remember work-like procedures, maintain attention for two-

hour segments, sustain an ordinary routine without special supervision, make simple-

work related decisions, accept instruction and respond appropriately to criticism from

supervisors, and respond appropriately to changes in a routine work setting.  (T. 371).

He further assessed that plaintiff had no useful ability to function in maintaining regular

attendance and being punctual within customary, usually strict tolerances; completing a

---

[2] Ms. Bernhardt was plaintiff's therapist at Equinox until the end of 2017. Based on Ms. Hines's medical opinion, it appears that she took over plaintiff's care at some point prior to March 7, 2018.  The record does not contain any progress notes prepared by Ms. Hines.

normal workday without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; and dealing with normal work stress.  (*Id.*).  Dr. Hertz found that plaintiff's prognosis was "guarded."  (T. 369).

The record also contains a March 7, 2018 Mental Impairment Questionnaire prepared by plaintiff's therapist at the time, Ms. Hines.  (T.  724-29).  Ms. Hines noted plaintiff's diagnoses of bipolar disorder, post-traumatic stress disorder, and dyslexia. (T. 724).  She assessed that plaintiff was unable to meet competitive standards in the majority of mental abilities and aptitudes needed to do unskilled work, including the ability to deal with normal work stress.  (T. 726).  Ms. Hines noted that plaintiff was unable to complete college due to "written requirements that demand cognitive skills and memories."  (T.  727).  She emphasized that plaintiff "does not understand many verbal or written directions."  (*Id.*).

The only other opinion of record is a January 4, 2017 assessment from state agency medical consultant, Dr. Austin-Small.  (T.  71-74).  In contrast to plaintiff's treatment providers, Dr. Austin-Small found that plaintiff had, at most, moderate limitations in a few of the listed abilities and aptitudes needed to perform unskilled work.  (T. 72-73).  With respect to adaptation, Dr. Austin-Small found that plaintiff had "some difficulty coping in stressful circumstances."  (T. 74).  Dr. Austin-Small based his assessment solely on a review of plaintiff's treatment records available at the time.

13

He did not consider Dr. Hertz's and Ms. Hines's opinions, which postdated his assessment.  Indeed, Dr. Austin-Smalls's assessment explicitly acknowledges that he did not have access to opinions from any treating or examining source.  (T. 71 – "There is no indication that there is medical or other opinion evidence.").

For several reasons, the ALJ erred in evaluating the medical opinion evidence in this matter.  First, it is not clear that the ALJ was justified in declining to afford controlling weight to Dr. Hertz's opinion.  Although the ALJ failed to specifically address the treating physician rule, his decision suggests that he assigned the opinion less than controlling weight because he found it to be inconsistent with other evidence in the record.  Even assuming the ALJ was justified in not assigning controlling weight to Dr. Hertz's opinion, the ALJ was still required to consider the remaining regulatory factors, and then set forth "good reasons" for the weight assigned.  Here, the ALJ did not expressly address the factors required to determine the proper weight to assign a treating physician's opinion, including the length of the treatment relationship, frequency of examination, the nature and extent of the treatment relationship, or the level of specialization.  "The Second Circuit has held that in order to override the opinion of the treating physician, the ALJ must explicitly consider such factors." *Jazina v. Berryhill,* No. 3:16-CV-1470, 2017 WL 6453400, at * (D. Conn. Dec. 13, 2017) (internal quotations omitted) (quoting *Selian v. Astrue*, 708 F.3d at 418).

Furthermore, the court cannot conclude that the ALJ gave "good reasons" for the

limited weight afforded to Dr. Hertz's opinion.  The primary basis for the ALJ's conclusion that Dr. Hertz's opinions were inconsistent with other evidence was his observation that plaintiff's "symptoms significantly improved after her hospitalization at Four Winds in September of 2016."  (T.  21).  To this end, the ALJ correctly noted that the majority of records from 2017 describe plaintiff's mental status examinations as generally unremarkable.  However, the ALJ failed to discuss, or even address, the fact that plaintiff was not enrolled in school full-time, nor was she working, during this period.  Plaintiff's manic episode, which precipitated her hospitalization, occurred while she was attending her junior year of college.  Plaintiff did not return to school immediately after her hospitalization, and her medical records indicate that she spent the first half of 2017 at home, often sleeping or watching television. (T. 337, 467, 475, 483, 491, 499, 618-19).  She acknowledged that there were fewer stressors in her life at the time, a factor that, combined with her treatment regimen, likely contributed to her improved mental status.

When plaintiff eventually enrolled in two college classes in the summer of 2017, her reports of stress and anxiety increased significantly.[3]  In light of plaintiff's

---

[3] *See* T. 684 ("She reports concerns and worries about school and specifically performance anxiety."); 700 ("She reports some fatigue associated with stress.  She is now taking two classes at school and feels pressure."); 708, ("She reports increased anxiety and feeling tired due to stress of school demands. . . . [she] is avoiding face-to-face meeting [with professor]."; 508 ("She reports increase in anxiety due to pressure of school assignments.  She is also having difficulty with sleep but finds medication helpful."); 540 ("She reports anxiety and worry about school work and not feeling confident.  She feels her dyslexia is challenging and makes her life a struggle.").

complaints, her therapist found it appropriate to review with her the early warning signs of bipolar relapse. (T. 516). Based on plaintiff's fluctuating mental health symptoms and the ALJ's failure to meaningfully consider how differing stress levels affected plaintiff's mental status, the court cannot accept the ALJ's blanket assertion that Dr. Hertz's restrictive opinion was inconsistent with the other medical evidence.

In fact, the ALJ failed to adequately address any of the substantial evidence indicating that stress would negatively impact plaintiff's ability to hold a full-time job. "Because stress is highly individualized, mentally impaired individuals may have difficulty meeting the requirements of even so-called low-stress jobs, and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his [or her] ability to work." *Collins v. Colvin*, No. 15-CV-423, 2016 WL 5529424, at *3(W.D.N.Y. Sept. 30, 2016) (internal quotations and citations omitted). Accordingly, "[a]n ALJ is required to specifically inquire into and analyze a claimant's ability to manage stress." *Id*. at *8. "An ALJ's failure to explain or account for stress limitations in the RFC – particularly when opined by an acceptable medical source given great weight – is an error that requires remand." *Cooley v. Berryhill*, No. 6:16-CV-06301, 2017 WL 3236446, at *12 (W.D.N.Y. July 31, 2017); see also *Booker v. Colvin*, No. 14-CV-407, 2015 WL 4603958, at *3 (W.D.N.Y. July 30, 2015) ("Given the evidence outlined above and the considerations articulated in SSR 85-15, this Court finds that the ALJ's

failure to explain the "low-stress" limitations included in the RFC is an error that requires remand.").

In addition to plaintiff's documented hospitalization for a manic episode brought on by stress, both of plaintiff's treatment providers opined that plaintiff was significantly limited in her ability to deal with normal work stress. (T. 371, 726). The ALJ did not adequately explain his reason for rejecting these opinions, nor did he justify omitting any stress limitations in his RFC. The court recognizes that an RFC determination can adequately account for a claimant's stress, without explicitly referencing a stress limitation. *See, e.g., Clemons v. Comm'r of Soc. Sec.*, No. 5:16-CV-658(ATB), 2017 WL 766901, at *6 (N.D.N.Y. Feb. 27, 2017) ("although the ALJ did not explicitly mention plaintiff's ability to manage stress in his RFC determination, his ultimate conclusion that plaintiff could perform simple tasks adequately addressed any limitations that plaintiff had in this functional area"); *Moxham v. Comm'r of Soc. Sec.*, No. 3:16-CV-1170 (DJS), 2018 WL 1175210, at *10 (N.D.N.Y. Mar. 5, 2018) (limitation to "simple tasks and instructions, decisions on simple work-related matters, and frequent interaction with others" adequately accounted for the plaintiff's stress-related limitations). However, the ALJ's RFC does not include limitations that would adequately address that, as plaintiff's mental health providers opined, she was unable to appropriately manage stress. In fact, the ALJ found that plaintiff could perform semi-skilled tasks–an opinion this court cannot reconcile with the evidence of

record without further explanation from the ALJ.

Although Dr. Austin-Small may have, arguably,[4] assessed less restrictive stress limitations than Dr. Hertz and Ms. Hines, his opinion does not provide substantial evidence supporting the ALJ's RFC determination.  At the outset, the ALJ afforded "partial weight" to Dr. Austin-Small's opinion, apparently rejecting the majority of his opined moderate mental limitations.  (T.  21). In dismissing the restrictive opinions of plaintiff's treating sources and the non-examining consultant with respect to several of plaintiff's mental health limitations on her ability to perform work, the ALJ substituted his lay opinion for that of the treating providers, without adequate support from any other medical opinion evidence.  *See Deshotel v. Berryhill,* 313 F. Supp. 3d 432, 435 (W.D.N.Y. 2018) ("[T]he leeway given to ALJs to make common sense judgments does not necessarily extend to the assessment of mental limitations, which are by their very nature highly complex and individualized."); *Nasci v. Colvin,* No. 6:15-CV-0947(GTS), 2017 WL 902135, at *9 (N.D.N.Y. Mar. 7, 2017).

To the extent the ALJ allowed the opinion of state agency medical consultant, Dr. Austin-Small, to override the opinions of plaintiff's treatment providers, in

---

[4] Dr. Austin-Small did not specifically assess plaintiff's capacity to deal with work-related stress. (T. 71-74).  He did opine that plaintiff had no evidence of limitation for carrying out very short and simple instructions or making simple work-related decisions.  (T. 72).  He assessed that she was not significantly limited in her ability to carry out detailed instructions. (*Id.*).  He then determined that plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods.  (T. 72). In his narrative, Dr. Austin-Small acknowledged that plaintiff "has some difficulty coping in stressful circumstances."

particular Dr. Hertz, this too was error.  With regard to a non-examining consultant's opinion, "[t]he general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. The advisers assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." *Soto-Rivera v. Comm'r of Soc. Sec.*, No. 17-CV-6675, 2019 WL 2718236, at *3 (W.D.N.Y. June 28, 2019) (internal quotations omitted) (quoting *Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990));  *Filocomo v. Chater*, 944 F. Supp. 165, 169 (E.D.N.Y. 1996) ("The conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight.").

Notwithstanding the general rule, the opinion of a non-examining source may be credited over that of an examining physician under the proper circumstances. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record) (internal citation omitted); *Dronckowski v. Comm'r of Soc. Sec.*, No. 1:18-CV-27, 2019 WL 1428038, at *5 (W.D.N.Y. Mar. 29, 2019) (citing *Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 336-37 (W.D.N.Y. 2018)).  However, the regulations caution that "because non-examining sources have no examining or treating relationship with [a claimant], the weight we will give their opinions will depend on the degree to which they provide

supporting explanations for their opinions." *D'augustino v. Colvin*, No. 15-CV-6083,

2016 WL 5081321, at *2 (W.D.N.Y. Sep. 16, 2016) (citing 20 C.F.R. §

404.1527(c)(3)). It is incorrect for an ALJ to place significant weight on the findings of

a non-examining source that differ from other medical evidence of record without

adequate explanation. *Id.* (citing *Frederick v. Barnhart*, 317 F. Supp. 2d 286, 298-99

(W.D.N.Y. 2004) (finding error where the ALJ relied primarily on the opinion of the

non-examining, non-treating review physicians)). Even where a non-examining

opinion is afforded weight, it alone cannot be considered substantial evidence. *See*

*Ellet v. Comm'r of Soc. Sec.*, No. 1:06-CV-1079 (FJS), 2011 WL 1204921, at *9

(N.D.N.Y. Mar. 29, 2011) ("Although the Social Security Regulations do not

contemplate that the opinions of a non-examining physician be treated as substantial

evidence, these opinions may constitute substantial evidence where they are in turn

supported by substantial evidence in the record.") (internal citations omitted).

Dr. Austin-Small's opinion fails to adequately explain how the lack of stress

contributed to plaintiff's improved condition during the period in which he references

her "gradually" improved symptoms. (T. 73). Thus, his non-examining opinion,

coupled with plaintiff's improved mental status after her hospitalization does not,

without more, constitute substantial evidence supporting the ALJ's conclusion that

plaintiff had the mental RFC to perform full-time work. Furthermore, the ALJ failed to

acknowledge that Dr. Austin-Small did not review the full record, namely the opinions

of Dr. Hertz and Ms. Hines.  Because Dr. Austin-Small's opinion was not based on a

full record, the ALJ should not have relied on that opinion, nor should he have allowed

it to override the opinion of Dr. Hertz and Ms. Hines.[5]  *See, e.g.,  Tarsia v. Astrue*, 418

F. App'x 16, 18 (2d Cir. 2011) ("Because it is unclear whether [the state agency

medical consultant] reviewed all of Tarsia's relevant medical information, his opinion

is not 'supported by evidence of record' as required to override the opinion of [the]

treating physician[.]"); *Beutel v. Berryhill*, No. 3:17-CV-1193, 2018 WL 3218662, at

*7 (D. Conn. July 2, 2018) ("The opinion of the non-examining physician . . . was

rendered without the benefit of plaintiff's missing treatment records.  It was also

rendered without the benefit of [the treating source's] opinions.  Because that opinion

was not based on a full record, the ALJ should not have relied heavily on it.").

For these reasons, the court agrees that the ALJ misapplied the treating physician

rule and the ALJ's evaluation of the medical opinion evidence is not supported by

---

[5] The Court acknowledges that Ms. Hines, a social worker, was not a medical source whose opinions are entitled to controlling weight. However, her opinion as a treating provider, considered in conjunction with that of Dr. Hertz, casts significant doubt on the ALJ's decision to afford greater weight to Dr. Austin-Small's non-examining opinion.  Given the lack of objective measures of many aspects of mental health, greater weight should generally be afforded treating providers who have multiple opportunities to observe and communicate with the plaintiff, as opposed to the consulting physicians, who see the plaintiff once, if at all.  *See, e.g., Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 122 (2d Cir. 2018) (doctors who have not treated or examined a patient are generally entitled to less deference; "the treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as x-rays or MRIs"). The ALJ inappropriately relied on a non-examining opinion, or his own lay judgment, to discount the limitations documented by two sources who examined and interacted with plaintiff and could better assess the full extent of her mental health conditions and related limitations.

substantial evidence.  Thus, remand is warranted.  On remand, the ALJ should reconsider the weight to be assigned to the opinion evidence of record.  If the ALJ chooses to give less than controlling weight to Dr. Hertz's opinion, the ALJ should explicitly explain the weight assigned, giving "good reason" for doing so.  In addition, the ALJ should specifically inquire into and analyze plaintiff's ability to manage stress in order to fashion RFC findings supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.


Dated:   July 9, 2020

Andrew T. Baxter
U.S. Magistrate Judge